Filed 9/30/16  In re A.F. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | B269862<br><br>(Los Angeles County<br>Super. Ct. No. CK67811) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>  v.<br><br>J.N.,<br><br>     Defendant and Appellant. | |

Appeal from an order of the Superior Court of Los Angeles County.  Terry Troung, Juvenile Court Referee.  Affirmed.

Law Offices of Vincent W. Davis & Associates and Stephanie M. Davis for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

* * * * * *

J.N. (mother) challenges the juvenile court's order of November 24, 2015 terminating her parental rights. Mother contends the court erred in concluding the beneficial parent/child relationship exception did not apply.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Then-three-year-old A.F. first came to the attention of the Los Angeles County Department of Children and Family Services (Department) in June 2013. A.F. was living with mother at the home of the maternal grandparents. When deputies with the Los Angeles County Sheriff's Department served a search warrant at the home due to suspected illegal drug sales by the maternal grandfather, they found five children, including A.F., living in the home and referred the matter to the Department for suspected child endangerment.

On June 28, 2013, a petition was filed alleging mother's failure to protect pursuant to Welfare and Institutions Code section 300, subdivision (b).[1] The petition alleged mother allowed A.F. to be in a detrimental and endangering home environment with access to illegal drugs and weapons and where regular drug trafficking occurred.

A.F. was detained and placed in the home of maternal great aunt (M.V.) and great uncle (R.V.).

Mother told the social worker that father, S.F.[2], was a gang member and was incarcerated on a probation violation, as well as on new charges related to narcotics possession or sales. An amended petition was filed adding allegations concerning father's history of substance abuse and criminal activity.

The detectives investigating the drug trafficking at the maternal grandparents' home reported that a loaded handgun, as well as marijuana, were found in the house, accessible to the minors. Mother's cell phone contained text messages from individuals

---

[1]     All undesignated section references are to the Welfare and Institutions Code.

[2]     Father is not a party to this appeal.

inquiring about buying "a twenty or $30 worth" and responses confirming whether maternal grandfather had the quantity being requested. One of the other minor children living in the home reported that he witnessed maternal grandfather handing "white rocks" to people and receiving money from them, and said there was a rifle in the garage. Mother denied any knowledge of drug use or sales occurring in the home.

The court sustained the amended petition as to mother, and continued the hearing as to father.

In a supplemental report, the social worker expressed concern that mother continued to minimize her involvement in the circumstances that led to A.F.'s detention by the Department, and minimized father's criminal history. Mother did express a willingness to go to individual counseling and attempt to address the case plan. Mother's monitored visits with A.F. generally went well.

At the December 20, 2013 continued hearing, the court sustained the amended petition as to father, and ordered various services, including counseling and drug testing. Father, who had been released from prison, was allowed monitored visits with A.F., but mother was not allowed to be the monitor.

Subsequent to disposition, father was arrested on probation violations three times in less than five months, including for positive drug tests. Mother had moved in with an adult sister, but was still unemployed. She had made minimal progress on her case plan. Both mother and father missed visits with A.F. in early 2014. A.F.'s therapist reported that she appeared to have regressed in treatment subsequent to mother obtaining unmonitored visitation. A.F. started to have nightmares and bedwetting episodes, and showed more sensitivity to becoming emotionally upset. A.F. nonetheless expressed a desire to be with her mother, but said she was happy living with her great aunt and uncle.

In August 2014, the Department reported that mother had made some progress in her case plan. Mother completed a 15-week court-ordered parenting class, and had also attended some individual counseling. Father was still largely noncompliant. Several months later, the social worker reported that mother was maintaining fairly regular weekly visits with A.F. but M.V. expressed concern that mother seemed distracted during

the visits and did not "display affection" or give A.F. much attention. A.F. was reported as having been diagnosed with ADHD and prescribed Adderall.

The Department next reported that mother had made significant improvement in maintaining regular counseling sessions and in visitation with A.F. Mother was granted unmonitored overnight visits with A.F. over the holidays and no issues or incidents were reported. The Department recommended that A.F. be released to mother's custody. In January 2015, the court ordered A.F. released to mother's custody, under the continuing supervision of the Department, with family maintenance services.

Less than four months later, the Department received another referral about A.F. being repeatedly left alone unsupervised, with access to drug paraphernalia, in the home of the maternal grandparents. It was reported that A.F. was regularly left in the home with her 16-year-old aunt (L.N.) and her girlfriend, both admitted marijuana users, who gave A.F. a pipe to smoke (other reports indicate it may have been an e-cigarette). A.F. was often seen alone, dirty, barefoot and looking "depressed." On one Saturday night, then five-year-old A.F. was observed walking alone at 9:00 p.m. heading down the street to buy an ice cream from a street vendor. On another day, after it was already dark outside, it was reported that A.F. had been missing for over an hour and was eventually located only because some of her cousins saw her wandering around in a neighbor's yard where boys were smoking. A.F. was barefoot and in dirty clothes. Shortly thereafter, A.F. was sent home from school with lice. The school attendance clerk reported that A.F. had already missed 26 days of school and had 19 "tardies."

Mother was apparently spending most of her time at a motel with her new boyfriend, who was a known gang member. Mother had not maintained A.F.'s weekly therapy sessions and had not maintained her Adderall prescription. In March 2015, the maternal grandmother reported that mother left A.F. at her house and then disappeared and was not returning phone calls. Maternal grandmother reported she planned on taking A.F. back to the maternal great aunt's home.

4

The social worker reported that mother had been arrested for theft, and had signed a one-page letter, without the Department's knowledge, purporting to give "temporary" guardianship of A.F. to the paternal grandmother.

The social worker reported that in talking to A.F. she expressed sadness and confusion about her mother leaving her at her grandparents' home and not staying with her. A.F. said she would tell her mother to come back when she called but "she wouldn't." A.F. said she had been staying for awhile with her mother and her new boyfriend in a motel. There were "10 guns" on and inside the dresser in the motel room and at some point, A.F. said the police came and arrested the boyfriend. A.F. said she had then been living with her grandparents again and her mother was usually not there. A.F. confirmed that her aunt L.N. and her girlfriend gave her a pipe to smoke but she "didn't do it."

On May 20, 2015, the Department filed a petition pursuant to section 342, subdivision (b) and requested that A.F. be removed from mother's custody. The court ordered that A.F. be detained and placed back with M.V. and R.V., her maternal great aunt and uncle, and not be removed from their care absent an emergency. The court sustained an amended version of the section 342 petition at a hearing on July 30, 2015, denied further reunification services, and set a hearing pursuant to section 366.26 to select a permanent plan for A.F.

Mother had not maintained regular visits with A.F. since she was removed from mother's care in May 2015. Mother visited with A.F. in a park on June 30, 2015, and spent most of the time texting and not engaging with A.F. at all. She attended a family get together on the Fourth of July and once again spent most of the time texting on her phone. Mother paid "little attention" to A.F. As of October 7, 2015, M.V. reported that mother had not visited with A.F. since the child's birthday in July. Father had not visited since his release from jail on May 27, 2015. A.F. had expressed anger and upset to her caregivers about her parents' failure to visit and their cancellation of visits.

The Department further reported that A.F. had a strong and healthy relationship with M.V. and R.V. and they wished to adopt her. M.V. and R.V. reported a willingness to allow A.F. to maintain family ties following adoption.

At the November 24, 2015 hearing, the court found by clear and convincing evidence that A.F. was adoptable and that it would be detrimental to her to be returned to her parents' custody. The court found that no statutory exception applied, explaining "I cannot find that the parents have maintained regular visitation and contact with [A.F.], and there is no evidence to show that she would benefit from continuing in that relationship with the parents." The court terminated parental rights and identified the maternal great aunt and uncle (A.F.'s caregivers) as the prospective adoptive parents.

This appeal followed.

## DISCUSSION

Once reunification services have been terminated and the dependency proceedings reach the section 366.26 hearing, adoption is the preferred permanent plan decreed by the Legislature. (§ 366.26, subd. (b).) The statute mandates that parental rights be terminated, unless the parent can establish one of the enumerated exceptions. (§ 366.26, subd. (c)(1).) "An exception to the adoption preference applies if termination of parental rights would be detrimental to the child because the 'parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' (§ 366.26, subd. (c)(1)(B)(i).)" (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.) "[T]he party claiming an exception to adoption has the burden of proof of establishing by a preponderance of evidence that the exception applies." (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449.)

We review the juvenile court's order as to the factual issue of the existence of a beneficial parent/child relationship for substantial evidence. (*In re K.P.* (2012) 203 Cal.App.4th 614, 622; accord, *In re Noah G.* (2016) 247 Cal.App.4th 1292, 1300.) The juvenile court's finding as to whether termination of that relationship would be detrimental to the child "as weighed against the benefits of adoption is reviewed for abuse of discretion." (*In re Noah G.*, at p. 1300.)

6

At the section 366.26 hearing, mother had the burden to establish that she maintained regular contact with A.F., and also that A.F. would substantially benefit from a continued relationship with her. (§ 366.26, subd. (c)(1)(B)(i).) There must be solid, credible evidence in support of both prongs of the exception. "The Legislature emphasized the exceptional nature of all the circumstances identified in section 366.26, subdivision (c)(1) by revising the statute in 1998 to require the court to find not only that one of the listed circumstances exists, but also that it provide 'a compelling reason for determining that termination would be detrimental to the child.' [Citation.]" (*In re Jasmin D*. (2000) 78 Cal.App.4th 1339, 1349.)

After obtaining an order from the court allowing the return of A.F. to her custody in January 2015, mother immediately returned to a pattern of neglect of A.F. that endangered her physical and emotional well-being. Following the second removal order in May 2015, mother failed to make any reasonable effort to visit or maintain contact with A.F. It appears she visited with A.F. as few as three times between May and October 2015, and apparently spent most of the time texting on her phone instead of engaging in any way with A.F. during the "visits." Mother did not engage in any parental activities or otherwise did not occupy or even attempt to occupy a parental role in A.F.'s life. There is no evidence, let alone substantial evidence, of a beneficial parent/child relationship within the meaning of the statute.

"To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B*. (2002) 97 Cal.App.4th 454, 466.) "[F]or the exception to apply, the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent relative, such as an aunt." (*Id.* at p. 468; accord, *In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1419; *In re*

7

*Noah G*., *supra*, 247 Cal.App.4th at p. 1300.)  Mother has failed to show the juvenile court abused its discretion in terminating her parental rights and freeing A.F. for adoption.

## DISPOSITION

The court's order of November 24, 2015 terminating parental rights is affirmed.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.



FLIER, J